| | |
|---|---|
| 1 | LYNNE C. HERMLE (STATE BAR NO. 99779) |
| | ANJALI PRASAD VADILLO (STATE BAR NO. 318440) |
| 2 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 1000 Marsh Road |
| 3 | Menlo Park, CA  94025-1015 |
| | Telephone:  +1 650 614 7400 |
| 4 | Facsimile:   +1 650 614 7401 |
| | lchermle@orrick.com |
| 5 | avadillo@orrick.com |
| 6 | KATIE E. BRISCOE (STATE BAR NO. 287629) |
| | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 7 | 400 Capitol Mall, 30th Fl |
| | Sacramento, CA  95814-4497 |
| 8 | Telephone:  +1 916 447 9200 |
| | Facsimile:   +1 916 329 4900 |
| 9 | kbriscoe@orrick.com |
| 10 | LAUREN R. LEIBOVITCH (STATE BAR NO. 323230) |
| | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 11 | 631 Wilshire Blvd., Suite 2C |
| | Santa Monica, California  90401 |
| 12 | Telephone:  +1 310 633 2800 |
| | Facsimile:   +1 310 633 3849 |
| 13 | lleibovitch@orrick.com |
| 14 | Attorneys for Defendant |
| | SCHINDLER ELEVATOR CORPORATION |
| 15 | |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRED NAZAR, an individual, on behalf of himself and others similarly situated, | Case No. | **'24CV1082 CAB AHG** |
| Plaintiff, | San Diego County Superior Court Case No. 37-2024-00022945-CU-OE-CTL | |
| v. | **NOTICE OF REMOVAL** | |
| SCHINDLER ELEVATOR CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive, | | |
| Defendants. | | |

NOTICE OF REMOVAL
CASE NO. _____

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332(d), 1367, 1441, and 1446, Defendant Schindler Elevator Corporation hereby removes the above-captioned action from the Superior Court of the State of California, County of San Diego, to this Court, based on the following grounds:

I.  **BACKGROUND**

1. On May 17, 2024 in the Superior Court of California for the County of San Diego, Plaintiff Fred Nazar filed a Complaint entitled "*Fred Nazar, an individual, and on behalf of himself and others similarly situated, Plaintiff, v. Schindler Elevator Corporation, a Delaware corporation; and Does 1 through 50, inclusive, Defendants*, Case No. 37-2024-00022945-CU-OE-CTL" ("the Action"). True copies of the Summons, Complaint, Civil Case Cover Sheet, and the Notice of Case Assignment and Case Management Conference, Alternative Dispute Resolution (ADR) Information, Notice of E-filing requirements and Imaged Documents and Stipulation to use Alternative Dispute Resolution served on Schindler are attached to this Notice as **Exhibits 1-7**. No other pleadings have been filed or served in the Action.

2. The Complaint asserts causes of action on a class-wide basis on behalf of California non-exempt employees for: (1) failure to pay minimum wages in violation of Labor Code section 1197; (2) failure to pay wages and overtime in violation of Labor Code section 510; (3) failure to provide meal periods in violation of Labor Code section 226.7; (4) failure to authorize and permit rest breaks in violation of Labor Code section 226.7; (5) failure to provide accurate, itemized wage statements in violation of Labor Code section 226(a); (6) failure to maintain records in violation of Labor Code sections 1174 and 1174.5; (7) failure to produce requested employment records in violation of Labor Code sections 226 and 1198;

- 1 -

NOTICE OF REMOVAL
CASE NO. _____

(8) failure to provide final wages in violation of Labor Code section 203; and (9) unfair competition in violation of California Business and Professions Code section 17200 *et seq. See generally* Complaint.

3. As explained in detail below, Plaintiff contends that Defendant has "unlawful compensation policies and practices, which [have been] applied uniformly to the [putative class] members working for [Defendant] throughout California." Complaint ¶ 15. Among other things, Plaintiff alleges Defendant had a consistent policy of failing to pay Plaintiff and putative class members for all hours worked at their regular, overtime, and double-time rates, including by requiring off-the-clock work and rounding time entries. *Id.* ¶¶ 16, 55; *see id.* ¶¶ 41, 46-51, 54-61. Plaintiff also alleges Defendant failed to provide Plaintiff and putative class members with lawful duty-free meal and rest periods or premium pay in lieu thereof. *Id.* ¶¶ 3, 18-19; *see id.* ¶¶ 63-67, 70-74. Plaintiff further alleges that Defendant failed to pay Plaintiff and putative class members all wages due and owing at termination or resignation and failed to provide them with accurate itemized wage statements. *Id.* ¶¶ 3, 77-82, 96-101.

4. The Complaint did not expressly state any claim under federal law and omits that the terms and conditions of Plaintiff's employment were subject to applicable collective bargaining agreements (the "CBAs").

5. Defendant was served with the Complaint on May 23, 2024. This Notice of Removal is timely because this Notice is filed within 30 days after service of the Complaint. 28 U.S.C. § 1446(b).

## II. CLASS ACTION FAIRNESS ACT JURISDICTION

6. Defendant removes this action based upon the Class Action Fairness Act of 2005, codified in 28 U.S.C. § 1332(d) ("CAFA"). This Court has original jurisdiction of this action under § 1332(d)(2). As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a) because (1) it is a class action in which at least one class member is a citizen of a state different from that of any one

defendant, (2) the proposed class exceeds 100 members, and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A). No defendant identified in the Complaint is a state, officer of a state, or a governmental agency. 28 U.S.C. § 1332(d)(5).

### A.     Minimal Diversity is Satisfied

7.     CAFA's minimal diversity requirement is satisfied here because at least one member of the putative class is a citizen of a different state from that of one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Specifically, Plaintiff is a citizen of a state (California) that is different from that of Defendant (Delaware and New Jersey). *See* Complaint ¶¶ 2, 4.

8.     **Plaintiff's Citizenship.** Plaintiff alleges he "is a resident of California and, during the time period relevant to this Complaint, was employed by [Defendant] as a non-exempt hourly employee within the State of California, county of San Diego." Complaint ¶ 2. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). Domicile is determined by an individual's residence and intent to remain indefinitely. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). Residence is *prima facie* the domicile. *See Ayala v. Cox Automotive, Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. 2016) (allegation that Plaintiff "is, and at all times mentioned in the Complaint was," a California resident "gives rise to a presumption that Plaintiff is a California citizen"). Place of employment is also an important factor weighing in favor of citizenship. *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Therefore, Plaintiff is a citizen of California.

9.     **Defendant's Citizenship.** For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "where a corporation's officers direct,

control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (adopting "nerve center" test to determine corporation's principal place of business). The proper inquiry is to determine a corporation's "center of overall direction, control and coordination." *Id.*

10.  Defendant is now, and was at the time of the filing of the Complaint, a corporation incorporated under the laws of the State of Delaware. Complaint ¶ 4. Defendant's principal place of business is currently, and was at the time of filing of the Complaint, in Morriston, New Jersey. *Id.* Defendant's corporate headquarters is located in Morriston, New Jersey. Therefore, Defendant is a citizen of Delaware and New Jersey for the purposes of determining diversity of citizenship.

11.  **Doe Defendant's Citizenship.** The citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(a); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989), *cert. denied*, 493 U.S. 1076 (1990).

### B.  The Putative Class Exceeds 100 Members

12.  CAFA's requirement that the proposed class include no less than 100 members is satisfied here because the alleged putative class has more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

13.  Plaintiff seeks to represent "himself and all current and former [e]mployees within the State of California who, at any time from four (4) years to the filing of this lawsuit, are or were non-exempt, hourly employees by Defendant[.]" Complaint ¶ 1; *see id.* ¶ 27. Plaintiff alleges that "during the time period relevant to this lawsuit," Defendant "employ[s] or employed, at least hundreds of [e]mployees who satisfy the [c]lass definition within the State of California." *Id.* ¶ 31. Defendant asserts that the putative class has more than 100 members. A preliminary analysis of Defendant's records show that Defendant has employed approximately 611 non-exempt, hourly employees in California from May 17, 2020 to the present.

### C. The Amount in Controversy Exceeds $5,000,000

14.     CAFA's requirement that the aggregate claims of the individual members of a putative class, or the amount in controversy, exceed $5,000,000, exclusive of interest and costs, is similarly satisfied here. 28 U.S.C. § 1332(d)(6).

15.     Defendant denies Plaintiff's claims in their entirety and asserts that Plaintiff's claims are not amenable to class treatment. Defendant provides the following analysis of potential damages without admitting liability based on the allegations in Plaintiff's Complaint for jurisdictional purposes only and to demonstrate that Plaintiff's Complaint puts a sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(d). Nothing herein waives any of Defendant's defenses or arguments against the substantive merits of this action.

16.     Plaintiff seeks to recover, on behalf of himself and the putative class, among other things: compensatory damages, liquidated damages, wages and penalties under the Labor Code, attorneys' fees, costs and interest based on the allegations that Defendant violated various wage-and-hour laws. *See* Complaint, Relief Requested ¶¶ 1-18.

17.     Plaintiff's Complaint is silent as to the total amount of damages claimed. When the amount in controversy is not readily apparent from a complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (*quoting Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A defendant must provide "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015) ("[A] defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal."). The defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. *Dart*,

574 U.S. at 87. Thus, Defendant is only required to establish that it is plausible that the amount in controversy exceeds $5,000,000.

18. Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); *Korn v. Polo Ralph Lauren*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met"). The Court should also include requests for attorneys' fees in determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

19. An initial review of Defendant's records shows that, during the proposed class period from May 17, 2020 to the present, Defendant employed approximately 611 non-exempt, hourly employees in California who would qualify as putative class members based on Plaintiff's allegations. The approximate average hourly rate of pay for these putative class members is $68.28. During that same period, these putative class members worked approximately 80,365 workweeks. From May 17, 2021 to the present, approximately 216 putative class members separated from their employment with Defendant. The approximate average hourly rate of pay for these separated employees is $55.00.

20. **Alleged Unpaid Overtime Wages.** Plaintiff's second cause of action alleges Defendant had a "consistent policy or practice" of failing to pay putative class members "overtime compensation at premium overtime rates for all hours worked in excess of eight hours a day and/or forty hours a week, and double-time rates for all hours worked in excess of twelve hours a day, in violation of Labor Code § 510 and the corresponding sections of IWC Wage Orders." Complaint ¶ 16; *see id.* ¶ 55. The Complaint seeks compensatory damages for work performed during the four-year period preceding the filing of the Complaint. *Id.* ¶ 61, Relief Requested ¶¶ 2,4.

21. Plaintiff's overtime claim is based on two theories of liability: (1) alleged off-the-clock work and (2) alleged unlawful rounding practices. Complaint ¶¶ 16, 55; *see id.* ¶¶ 41, 46-51, 54-61.

22. Specifically, Plaintiff alleges that Defendant "require[ed] [him] and other similarly situated non-exempt employees to work through meal periods or remain under [Defendant's] control when they were required to be clocked out or to otherwise work off the clock to complete their daily job duties and respond to demands from customers and managers." Complaint ¶ 56. Plaintiff contends that, as a result, he and putative class members "were not properly compensated, nor were they paid overtime rates for hours worked in excess of eight hours in a given day, and/or forty hours in a given week." *Id.*

23. Plaintiff also alleges that Defendant had a "uniform policy and practice of rounding all time entries rather than paying Plaintiff and the [putative class] members for all hours and minutes they actually worked." Complaint ¶ 12. Plaintiff further alleges that Defendant "did so with the ostensible intent of paying [putative class] members only for the hours they were scheduled to work, rather than the hours they were actually under [Defendant's] control." *Id.* Plaintiff claims the alleged "policy is not neutral and results, over time, to the detriment of the [putative class] members by systematically undercompensating them." *Id.*

24. Based on Plaintiff's allegations of a uniform policy and practice of failing to pay Plaintiff and other putative class members their overtime wages, Defendant very conservatively assumes that Plaintiff and each putative class member are claiming 10 minutes of unpaid overtime per workweek. The average hourly rate of pay for the putative class members is $68.28. There are approximately 80,365 work weeks over this four-year period. Accordingly, Plaintiff's claim for overtime wages puts at least **$1,371,830** in controversy. ([10 minutes divided by 60 minutes of overtime/workweek] x [80,365 workweeks] x [1.5 x $68.28 hourly rate] = $1,371,830).

25. **Alleged failure to provide meal periods.** Plaintiff's third cause of action alleges Defendant failed to provide Plaintiff and putative class members with duty-free meal periods as required by the Labor Code and applicable IWC Wage Order. Complaint ¶¶ 3, 19; *see id.* ¶¶ 63-67.

26. Specifically, Plaintiff alleges putative class members were "often" required to work or otherwise remain under Defendant's control during meal periods. Complaint ¶ 64. He also alleges meal periods were provided late, shortened, or interrupted due to work demands. *Id.* Plaintiff further alleges "on the occasions when [putative class members] worked more than ten (10) hours in a given shift, they did so without receiving a second uninterrupted thirty (30) minute meal period as required by law." *Id.* ¶ 64.

27. Plaintiff also alleges Defendant "failed to compensate [putative class members] for each meal period not provided or inadequately provided" as required under the Labor Code and applicable IWC Wage Order. Complaint ¶ 66. Plaintiff further alleges that "when [Defendant] did pay meal premiums, [it] did so at the normal regular rate of pay without factoring in all forms of remuneration/compensation or by otherwise incorrectly calculating the regular rate." *Id.*

28. Based on Plaintiff's allegations of meal period violations and failure to pay premiums, Defendant conservatively assumes Plaintiff and each putative class member experienced at least one noncompliant first or second unpaid meal period every other week for which they allege they are entitled to meal premiums. Using the aggregate number of workweeks divided by two to account for every other workweek, and the average hourly rate of pay for the putative class members, the total amount of meal premiums that Plaintiff is alleging would result in potential liability of approximately **$2,743,661**. ([1 meal violation/workweek] x [80,365 workweeks divided by 2] x [$68.28 hourly rate for meal period premiums] = $2,743,661).

29. **Alleged failure to provide rest breaks.** Plaintiff's fourth cause of action alleges that Plaintiff and other putative class members were not authorized and permitted to take legally compliant rest breaks as required by the Labor Code and applicable IWC Wage Order. Complaint ¶¶ 3, 18; *see id.* ¶¶ 70-74.

30. Plaintiff alleges that Defendant "consistently" failed to provide putative class members "with paid rest breaks of not less than ten minutes for every work period of four or more consecutive hours, or major fraction thereof." Complaint ¶ 18. Further, putative class members "were often required to work or to otherwise remain under [Defendant's] control during rest periods, including by responding to work requirements, and had breaks provided untimely as a result of . . . off the clock work." *Id.* ¶¶ 3, 70.

31. Plaintiff further alleges Defendant failed to provide putative class members "premium pay for each day on which requisite rest breaks were not provided or were deficiently provided," and "when [Defendant] did pay rest period premiums, [it] did so at the normal regular rate of pay without factoring in all forms or remuneration/compensation or by otherwise incorrectly calculating the regular rate." Complaint ¶¶ 18, 73.

32. Based on Plaintiff's allegations of rest period violations and failure to pay premiums, Defendant conservatively assumes that Plaintiff and each putative class member experienced at least one noncompliant first or second rest period every week for which they allege they are entitled to rest premiums. Using the aggregate number of workweeks and the average hourly rate of pay for the putative class members, the total amount of rest premiums that Plaintiff is alleging would result in potential liability of approximately **$5,487,322**. ([1 rest violation/workweek] x [80,365 workweeks] x [$68.28 hourly rate for rest period premiums] = $5,487,322).

33. **Alleged failure to provide accurate itemized statements.** Plaintiff's fifth cause of action is for failure to provide accurate itemized wage statements.

Complaint ¶¶ 21, 75-82. He alleges that Defendant failed to provide Plaintiff and the putative class members with accurate itemized wage statements as required by Labor Code section 226 and that Defendant is liable for damages and statutory penalties. *Id.*; *see also* Lab. Code § 226(e) (penalty of $50 for the initial pay period in which a violation occurs, $100 for subsequent violations, with a maximum penalty of $4,000 per employee); Cal. Code Civ. Proc. § 340(a) (statute of limitations is one year).

34. For the period of May 17, 2023 through the present, there are approximately 449 putative class members, 337 of whom have been employed for more than 40 pay periods (and as such, would meet the $4,000 maximum penalty under Labor Code section 226(e)). Plaintiff's claim for wage statement penalties would result in an amount in controversy of approximately **$1,543,500**. (($50 x 112 putative class members [first alleged violation penalty for first 112 wage statements]) + ($100 x 1,899 subsequent wage statements [second alleged violation penalties])) + [337 putative class members x $4,000 cap] = $1,543,500).

35. **Alleged waiting time penalties.** Plaintiff's eighth cause of action seeks recovery of waiting time penalties under Labor Code section 203. Complaint ¶¶ 95-101. Section 203 provides for up to 30 days' wages as a "waiting time" penalty for employers who willfully fail to pay wages owed upon separation. Lab. Code § 203; *see also Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1396 (2010) (Section 203 penalties are governed by a three-year statute of limitations).

36. Plaintiff alleges that he and putative class members are entitled to waiting time penalties because, among other things, putative class members were not paid all regular and overtime wages, and meal and rest period premiums. Complaint ¶ 99. Plaintiff further alleges Defendant's "failure to pay said wages within the required time was willful," and have "remained due and owing for more than thirty (30) days from the date of separation from employment." *Id.* ¶¶ 98, 99.

37.    According to Defendant's records, approximately 216 California non-exempt employees separated from their employment with Defendant from May 17, 2021 to the present. Conservatively estimating that each of those putative class members worked an average of only eight hours per day at the approximate average hourly rate of pay of $55.00, Plaintiff's claim for waiting time penalties would result in an amount in controversy of approximately **$2,851,200**. (216 former California non-employees x [8 hours x $55.00 average hourly rate of pay] x 30 days = $2,851,200).

38.    As the calculations above demonstrate, there is well over $5,000,000 in controversy in this action: $1,371,830 (unpaid overtime) + $2,743,661 (meal period premiums) + $5,487,322 (rest break premiums) + $2,851,200 (penalties for inaccurate wage statements) + $1,543,500 (waiting time penalties) = **$13,997,513**.

39.    The amount in controversy is also satisfied without addressing potential attorneys' fees, which are provided by statute and in the Ninth Circuit typically are 25% of any judgment in favor of the plaintiff. *See e.g.*, *Serrieh v. Jill Acquisition LLC*, 2023 WL 8796717, at *7 (E.D. Cal. Dec. 20, 2023) ("[t]he benchmark for class action attorneys' fees in the Ninth Circuit is 25%, "with 20-30% as the usual range"); *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, at *13 (N.D. Cal., June 14, 2013) (for CAFA amount in controversy, adding 25% of the amount in controversy on the claims for relief to account for attorneys' fees); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Including potential attorneys' fees would increase the amount in controversy by an additional $3,499,378, totaling **$17,496,891**. ($13,997,513 amount in controversy x 0.25 = $3,499,378). CAFA's amount-in-controversy requirement is satisfied.

40.    In sum, this Court thus has original jurisdiction over this Action under CAFA, and this Action may be removed to this Court pursuant to 28 U.S.C. § 1332(d).

## III. FEDERAL QUESTION JURISDICTION

41. Alternatively, this Action is removable to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185.

42. Federal question jurisdiction arises out of the fact that Plaintiff's claims require interpretation of the CBAs and are thus preempted by the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185 ("Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."). This Court thus has subject matter jurisdiction over Plaintiff's claims. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151–52 (9th Cir. 2019) (interpreting the LMRA as it applies to Labor Code section 510 claims: "a civil complaint raising claims preempted by [the LMRA] raises a federal question that can be removed to a federal court."); *Antonio v. Physicians for Healthy Hosps., Inc.*, 2019 WL 3082407, at *1 (C.D. Cal. July 15, 2019) (district court had subject matter jurisdiction over Labor Code section 510 claims where overtime pay exists solely by virtue of the CBA).

### A. Plaintiff's Employment Was Governed By the CBA

43. Plaintiff is a union member of the International Union of Elevator Constructors and his employment was governed by CBAs. Declaration of Jathan Van Winkle in Support of Notice of Removal ("Van Winkle Decl.") ¶ 4. The CBAs expressly outline an agreement on wages (including rate of pay and overtime wages), hours of work, working conditions, lunch periods, wage statements, grievance and arbitration procedures, among other things. *See generally*, Van Winkle Decl. ¶ 4, Exs. A & B.

### B. Plaintiff's Claims Are Preempted by the LMRA Because They Require Substantial Interpretation of the CBA

#### 1. Plaintiff's Failure to Recognize the CBA or the LMRA Does Not Preclude Removal

44. Although the Complaint omits that Plaintiff was a member of a union and his employment was governed by CBAs, Plaintiff cannot "artfully plead" his Complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (plaintiff's state law claim was preempted even though operative complaint did not mention collective bargaining agreement).

45. The fact that the Complaint does not specifically reference the LMRA does not preclude removal. *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may look beyond Plaintiff's Complaint on its face to determine whether the claims are preempted by the LMRA. *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) ("The artful pleading doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction") (internal citation omitted). The LMRA's "extraordinary pre-emptive power . . . converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Curtis*, 913 F.3d at 1152.

## 2. Plaintiff's Claims Turn on Interpreting the CBA

46. The LMRA preempts Plaintiff's overtime,[1] meal period, wage statement, and derivative claims. Plaintiff's claims involve rights that exist solely as a result of the CBAs and are substantially dependent on an analysis of the CBAs, and thus, are preempted by the LMRA. *Curtis*, 913 F.3d at 1153-55.

47. For example, the CBAs governing Plaintiff's employment outline and regulate overtime such that any overtime claim substantially depends on analysis and interpretation of the CBAs to determine, among other things, when, at what rate, and for what work is Plaintiff entitled to overtime. *See e.g.*, Van Winkle Decl. Ex. B. Art IX, ¶ 3 (for call-backs to be answered in downtown business areas or

---

[1] Defendant also contends that Plaintiff, as a union member, is statutorily exempt from the California overtime requirements in Labor Code section 510, and his right to overtime exists solely under the CBAs and not by virtue of state law. *See Curtis*, 913 F.3d at 1153-54.

similar areas, mechanics who work beyond regularly established working hours or on a Saturday during a week in which a holiday occurs shall be paid at time and one-half the single time rate); ¶ 4 (work performed on Sundays shall be classed as overtime and paid for at the double time rate), ¶ 5 (call-backs on contract service on overtime, except Sundays and holidays, shall be paid at 1.7 the single time rate); ¶ 6 (call-backs on contract service on Sundays and holidays shall be paid at double the single time rate); ¶ 7 (on contract service for certain buildings for specified examinations, Saturdays, Sundays, and Holidays are classed as overtime and paid at the overtime rate); ¶ 8 (travel time between the job and home on overtime call-backs shall be paid at the same overtime rate applying to the work). Plaintiff's right to lunch periods also substantially depends on analyzing the CBAs to assess. *See e.g.*, Van Winkle Decl. Ex. B. Art IX, ¶¶ 3-4 (outlining working days that include unpaid lunch period for contract service). The CBAs also identify requirements for wage statements—including specifying certain items to be included for certain types of work. *See e.g.*, Van Winkle Decl. Ex. B. Art XI, ¶ 2. Because the CBAs govern the allegations in Plaintiff's Complaint, their interpretation is essential. Plaintiff's remaining state law claims rely on the same allegations and are thus preempted by federal law.

48. This Court thus has original jurisdiction over this Action and this Action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c).

49. Moreover, to the extent any of Plaintiff's state law claims are not completely preempted by the LMRA, they arise from the same case and controversy as his preempted claims and thus are within this Court's supplemental jurisdiction under 28 U.S.C. § 1367, or in the alternative, are within this Court's jurisdiction pursuant to 28 U.S.C. § 1441(c).

IV. **NOTICE OF REMOVAL**

50. Venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(a). This action was originally brought in the Superior

Court of the State of California, County of San Diego, which is embraced by the Southern District of California.

51. This Notice of Removal shall be served promptly on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of San Diego pursuant to 28 U.S.C. § 1446(d).

52. In compliance with 28 U.S.C. § 1446(a), attached hereto as **Exhibits 1-7** are copies of the state-court papers served herein, including copies of all process, pleadings, and orders served upon Defendant.

53. WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

Dated: June 21, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____/s/ Anjali Prasad Vadillo_____
LYNNE C. HERMLE
KATIE E. BRISCOE
ANJALI PRASAD VADILLO
LAUREN R. LEIBOVITCH
Attorneys for Defendant
SCHINDLER ELEVATOR CORPORATION

4149-0942-9328.7